UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY as Subrogee of Eastern Savings Bank, | : : : : | CIVIL ACTION CASE NO.3:01-CV-1772(SRU) |
| Plaintiffs, | : : | |
| v. | : : | |
| BANK OF EAST ASIA LIMITED, M. DEAN MONTGOMERY, ESQ., BENTLEY, MOSHER, BABSON & LAMBERT, P.C., MARGARET L. LEE, JOHN CHENG, SINOWEST FINANCIAL SERVICES, TCRM ADVISORS, INC. and TCRM COMMERCIAL CORP., | : : : : : : : | |
| Defendants. | : | NOVEMBER 21, 2006 |

---

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO MOTION TO VACATE DEFAULT JUDGMENT**

**Preliminary Statement**

Old Republic submits this memorandum to supplement its Memorandum of June 6, 2006, opposing the motion of Cheng and Sinowest to vacate the default judgment against them.[1]

Discovery has demonstrated that, as anticipated, Cheng's protestations that he was never served and was unaware of this litigation until May 2006 are not credible. The affidavit he submitted to support his motion to vacate was largely untrue and cynically used the tragedy of September 11, 2001 for his personal advantage. When he was cross-examined at his deposition, his testimony contradicted the attestations in his affidavit. Then, recognizing that he had been

---

[1] Defined terms have the same meaning in this Memorandum as in the Plaintiff's Memorandum of June 6, 2006.

caught in numerous lies, he attempted to rescue the situation by "correcting" the deposition transcript.

These latest shenanigans do not help Cheng. They only underscore his disregard for the truth. The evidence strongly supports the inference that Cheng's default was willful; that he ignored this litigation until Old Republic located assets belonging to him, and that he then lied to the Court in an effort to avoid the default judgment against him.

## The Affidavit

The motion to vacate is based on Cheng's affidavit dated June 5, 2006 (attached as Exhibit A) in which he attested to the following:

> That mail which did not include his suite number designation in the address would not be delivered to him.
> (Affidavit ¶¶ 5 – 6.)
>
> That the premises at 40 Elizabeth Street were closed and not opened to tenants for two or three weeks following the September 11 attacks.
> (Affidavit ¶ 7.)
>
> That he had no knowledge or understanding that there was a dispute or lawsuit with respect to the subject matter of this litigation until he became aware of the collection efforts on the judgment against him.
> (Affidavit ¶ 12.)

By Cheng's own admission, each of these key points is untrue.

## The Deposition

On August 8, 2006, counsel for Old Republic deposed Cheng. A copy of the transcript is attached as Exhibit B. Under cross-examination Cheng was forced to admit the following:

(i)   In September 2001, the building at 40 Elizabeth Street, where his office was located, had a lobby with a desk for a "door person" who was present during regular business hours. (pp. 12 - 13.)

2

    (ii)    There was a directory in the lobby which contained the names of tenants – including Sinowest – and their suite numbers. (pp. 13 - 14.)

    (iii)    The letter carrier left the mail with the door person. Cheng was aware of and accepted this procedure. (pp. 24 - 25.)

    (iv)    The door person would deliver mail addressed to Sinowest even if it did not include a suite number. (p. 48.)

    (v)    Sinowest employed a receptionist but Cheng cannot remember the name of the receptionist employed in 2001; he paid her in cash, did not withhold federal income tax or FICA from her pay, and apparently has no records identifying her. (pp. 14 - 15, 32 - 34.)

    (vi)    Cheng visited the Bank of East Asia, two blocks from his office, on September 21, 2001, ten days after the September 11 attack, and would have had access to his office at 40 Elizabeth Street by that same day -- several days before the summons and complaint were delivered by certified mail. (pp. 26 - 29.)

    (vii)    Within a few months after this lawsuit commenced, Cheng discussed it with a representative of the co-defendant, TCRM. (pp. 39 - 40.)

During his deposition, Cheng also admitted that it was the door person who actually delivered the mail to the various offices at 40 Elizabeth Street. He later attempted to retract this testimony, claiming that he had confused 40 Elizabeth Street with his prior office at 20 Elizabeth Street. (See correction sheet accompanying deposition transcript.) The attempted "correction" is not credible since Cheng had not maintained an office at 20 Elizabeth Street for more than two years prior to the crucial dates in September 2001 (p. 5), and because plaintiff's counsel had specified <u>40</u> Elizabeth Street on three separate occasions in the two pages of the transcript Cheng seeks to change. (Page 16 line 18 through page 18 line 21.) In addition, Cheng provides no alternative explanation in his "correction" for how the mail purportedly was delivered at 40

3

Elizabeth Street. Moreover, even if the "correction" is credited, Cheng has still admitted the critical facts specified in items (i) through (vii) above. Those facts defeat his claim for relief.[2]

## ARGUMENT

Obviously, Cheng's alleged basis for vacating the default judgment does not withstand scrutiny. By his own admission, we now know that the lack of a suite number would not have prevented delivery to him of the summons and complaint. We also have confirmed that, despite the events of September 11, Cheng had access to his office on September 24, 2001, the date of the signature on the certified mail receipts. Moreover, at least two people authorized by Cheng to receive his mail could have signed for the certified mail -- the door person or the receptionist. Cheng has not offered any proof that they did not do so.

And despite his attestation in his affidavit that he "had no knowledge or information whatsoever to lead me to believe that there was a dispute with respect to the matters alleged here, and certainly had no understanding that a lawsuit had been commenced" (¶ 12), Cheng now admits that he was aware of the lawsuit within months of it being filed and discussed it with a co-defendant. In addition, he offers no explanation for the fact that items concerning this lawsuit were sent to him by regular mail at the Elizabeth Street address in September 2001 and never returned to the sender as undeliverable (Affidavit of Frank J. Silvestri, June 6, 2006, ¶ 4). Those items also would have alerted him to the existence of this lawsuit.

In short, Cheng appears to have made a conscious decision to ignore this lawsuit. When Old Republic surprised him by locating assets in New Jersey belonging to him and levying on

---

[2] On November 10, 2006, Cheng deposed Charles Govern, a mortgage broker who had done business with Cheng. The deposition provided no information whatsoever concerning the service issues pertinent to the pending motion.

them, he contrived a story to support a motion to vacate the judgment against him. The Court should not condone or reward this behavior.

     A motion to vacate a default judgment pursuant to Fed. R. Civ. P. 60(b)(1) and (6) is addressed to the discretion of the district judge. Enron Oil Corp. v. Diakuhara, 10 F. 3d 90, 95 (2d Cir. 1993). Rule 60(b)(1) provides that the court may set aside a default judgment if it results from "mistake, inadvertence, surprise or excusable neglect;" and Rule 60(b)(6) refers to "any other reason justifying relief from the operation of the judgment." While the factors the courts examine in deciding whether to set aside a default under Rule 55(c) or a default judgment under Rule 60(b) are similar, the courts apply the factors more rigorously in the case of a default judgment "because the concepts of finality and litigation repose are more deeply implicated in the latter action." Enron Oil Corp. v. Diakuhara, supra, 10 F. 3d at 96.

     The party seeking relief from a judgment bears the burden of demonstrating that relief is warranted. See, United States v. International Brotherhood of Teamsters, 247 F. 3d 370, 391 (2d Cir. 2001); Paddington Partners v. Bouchard, 34 F. 3d 1132, 1142 (2d Cir. 1994). Cheng has failed to meet this burden.

     The courts generally consider three criteria in determining whether to vacate a default: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted. American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F. 3d 57, 59 (2d Cir. 1996).

     In the circumstances of this case, however, the first factor alone is dispositive. The courts typically deny relief from default judgments which result from deliberate, strategic decisions by the defaulting party. That is the situation here. Cheng has not offered any excuse for his failure to respond to the complaint other than his discredited claim that he was unaware of

it. The actual facts demonstrate, however, that he had notice of the lawsuit and consciously decided not to respond. This deliberate decision to ignore the litigation disqualifies him from relief. It is not the "mistake, inadvertence, surprise or excusable neglect" required under Rule 60(b)(1) and Cheng has demonstrated no extraordinary circumstance which would justify relief under Rule 60(b)(6).

In Gucci American, Incorporated v. Gold Center Jewelry, 158 F. 3d 631, 635 (2d Cir. 1998), cert. denied, 525 U.S. 1106, 119 S. Ct. 873, 142 L. Ed. 2d 774 (1999), the Second Circuit noted that "defaults resulting from deliberate conduct . . . are not excusable" and held that the district court erred when it vacated a default judgment. The Court reached similar conclusions in Action S.A. v. Marc Rich & Co., Inc., 951 F. 2d 504, 507 (2d Cir. 1991); and United States v. Erdoss, 440 F. 2d 1221, 1223 (2d Cir. 1971), cert. denied, 404 U.S. 849, 92 S. Ct. 83, 30 L. Ed. 2d 88 (1971). See also American Alliance Insurance Co., Ltd. v. Eagle Insurance Company, supra, "[W]e have refused to vacate a judgment where the moving party had apparently made a strategic decision to default." 92 F. 3d at 60 - 61 (citations omitted).

In Barnes v. Printron, Inc., 1999 WL 335362 (S.D.N.Y. 1999) and Schroeder v. Indorsky, 1991 WL 161187 (S.D.N.Y. 1991), the courts refused to open defaults which were willful, and held that "[a] finding of willfulness obviates the need to continue the inquiry with respect to the existence of a meritorious defense and prejudice to plaintiff."

The Sixth Circuit reached a similar conclusion in Waifersong, Ltd. v. Classic Music Vending, 976 F. 2d 290 (6th Cir. 1992), a case remarkably similar to this one. In Waifersong the defendants ignored the lawsuit until after a default judgment entered and the plaintiff levied on the defendants' bank account. The defendants then moved to vacate the default judgment, claiming they had not been served with notice of the action. The trial court found their

testimony was not credible and, despite evidence that they had a defense on the merits, refused to vacate the default. On appeal the Sixth Circuit affirmed, noting:

> Because the district court's assessment of the evidence concerning defendants' culpability is unassailable, defendants could not establish that their conduct was the result of mistake, inadvertence, surprise or excusable neglect. Since that concluded the matter, demonstration of existence of a meritorious defense and lack of prejudice could not assist defendants' cause.

976 F. 2d at 293.

This analysis makes perfect sense. Otherwise a defendant could willfully ignore a lawsuit until after a default judgment entered, wait to see if the plaintiff could locate the defendant's assets, and, if so, then vacate the default by belatedly suggesting an arguable defense on the merits. This would make a mockery of court orders and procedures.

Accordingly, the pending motion to vacate should be denied because Cheng has failed to prove that he did not receive the complaint or that he was unaware of the lawsuit or that his default was not willful. If the Court does consider the other two factors, and Old Republic submits it should not, they provide little support for Cheng.

As discussed in Old Republic's Memorandum of June 6, 2006, Old Republic would unquestionably be prejudiced by having to proceed anew against Cheng, after litigating this matter for several years with the other defendants. Moreover, Margaret Lee, who squarely implicated Cheng in the fraudulent conspiracy, has been released from custody, her present location is not known, and there is obviously more opportunity for collusion between her and Cheng. In any event, even an absence of prejudice would not entitle Cheng to relief from the judgment. Securities and Exchange Commission v. McNulty, 137 F. 3d. 732, 738 (2d Cir. 1998), cert. denied 525 U.S. 931, 119 S. Ct. 340, 142 L. Ed. 2d 28, (1998).

Nor has Cheng provided persuasive evidence of a meritorious defense. He admits accompanying Margaret Lee to the closing at which the proceeds of the fraudulent conspiracy were delivered to her, and he admits receiving a "fee" from her. [Aff. Ex. A, ¶ 16; Ex. B, pp. 42 – 44.] He can provide no evidence of the amount of the fee or how it was paid. [Ex. B, pp. 35 – 37.]

Cheng's defense consists of conclusory denials of involvement in the scheme and a certification by a New Jersey lawyer that he prepared the power of attorney used to accomplish the scheme at the request of Cheng's colleague, Charles Govern. This hardly meets the burden of proof required to open a default judgment. "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." Enron Oil Corp. v. Diakuhara, supra, 10 F. 3d at 98.

## **CONCLUSION**

The very fact that Cheng submitted an affidavit replete with falsehoods to support his motion to vacate is the strongest possible evidence that the motion should be denied.  Cheng obviously has no supportable basis for vacating the default.  Granting his motion would reward behavior which exhibited disregard for the legal system at every step -- from ignoring the complaint to providing false testimony to support the pending motion.  The motion should be denied.

                                                 Respectfully submitted,

                                                 PLAINTIFFS

                                                 OLD REPUBLIC NATIONAL TITLE
                                                 INSURANCE COMPANY

                                             By /s/ Frank J. Silvestri, Jr.
                                                   Frank J. Silvestri, Jr., Esq.
                                                   Federal Bar No.: ct05367
                                                   Madeleine F. Grossman, Esq.
                                                   Federal Bar No: ct05987
                                                   LEVETT ROCKWOOD P.C.
                                                   33 Riverside Avenue
                                                   P.O. Box 5116
                                                   Westport, CT  06881
                                                   Telephone: (203) 222-0885
                                                   Facsimile: (203) 226-8025

125526

**CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was mailed, First Class Mail, postage pre-paid, on this the 21st day of November, 2006, to the following counsel of record:

William Champlin, III, Esq.
Tyler, Cooper & Alcorn
CityPlace – 35th Floor
185 Asylum Street
Hartford, CT  06103-3488

Francis M. Donnarumma, Esq.
100 Grand Street, Suite 2F
Waterbury, CT  06702

Scott S. McKessy, Esq.
Reed Smith LLP
599 Lexington Avenue, 29th Floor
New York, NY  10022

Kenneth S. Sussmane, Esq.
Sussmane & Zapfel, P.C.
521 Fifth Avenue, 28th Floor
New York, NY  10175

Christopher L. Brigham, Esq.
Updike, Kelly & Spellacy, P.C.
One Century Tower
265 Church Street
New Haven, CT  06510

Stephen P. Fogerty, Esq.
Michael K. Stanton, Jr., Esq.
Halloran & Sage LLP
315 Post Road West
Westport, CT  06880

/s/ Frank J. Silvestri, Jr.
Frank J. Silvestri, Jr.

125526