**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY as Subrogee of Eastern Savings Bank | 3:01 CV. 1772 (SRU) |
| vs. | |
| BANK OF EAST ASIA LIMITED, M.DEAN MONTGOMERY, ESQ., BENTLEY, MOSHER, BABSON & LAMBERT, P.C., MARGARET L. LEE, JOHN CHENG, SINOWEST FINANCIAL SERVICES and TCRM ADVISORS, INC. | JUNE 5, 2006 |

### AFFIDAVIT OF JOHN CHENG

STATE OF NEW JERSEY   )
                      )
COUNTY OF MIDDLESEX   )

JOHN CHENG, being duly sworn, deposes and says as follows:

1. I am over the age of eighteen and believe in the obligation of an oath. I am named personally as a Defendant in the above matter. I conduct business as Sinowest Financial Services ("Sinowest"), also named as a Defendant in this matter.

2. This Affidavit is submitted in support of the Motion made by my counsel to vacate the Default Judgment entered against myself and Sinowest on July 22, 2005. A copy of the Default Judgment is annexed as Exhibit "A."

A.   **Unaware of Commencement or Conduct of Action**

3. At no time did I receive notice of this action and, until recent collection efforts were made, I was unaware that this lawsuit existed. The first time I was made aware of this matter was upon my receipt in early May of 2006 of service upon Bank of America of a New

Jersey Superior Court Levy/Writ of Execution indicating that a Judgment had been obtained in the amount of $1,284,390. Annexed hereto as Exhibit "B" is a copy of the United States District Court, District of New Jersey Judgment, an Affidavit filed in connection with that application and the correspondence directed to my attention from Bank of America. Since that time, a Subpoena Duces Tecum has also been served on Bank of America – reflecting an erroneous Judgment amount of $11,284,390. A copy of the Subpoena Duces Tecum is annexed hereto as Exhibit "C."

    4. Upon receipt of these enforcement documents, my New Jersey based counsel took steps to review and obtain certain documents from the Court file maintained at the United States District Court in Bridgeport. I have reviewed those documents and they support the fact that I never received notice of the proceeding.

    5. I submit, herewith, for the Court's reference copies of the Summons documents directed to myself and Sinowest. See Exhibit "D." As the Court will note, the Summonses attached are dated September 17, 2001, reflect service pursuant to Connecticut statutory provisions and reflect, additionally, that the Summons and Complaint were mailed by Certified Mail, Return Receipt Requested to my attention and to the attention of Sinowest at "40 Elizabeth Street, New York, NY 10013." The 40 Elizabeth Street building is a five story commercial building in the Chinatown section of New York, with approximately forty (40) tenants occupying space in 2001. In September of 2001, I maintained an office at 40 Elizabeth Street at Suite 508. The suite number designation – which would be necessary to ensure that anything forwarded to my attention would be properly directed to the Sinowest offices – is missing from the Summons material provided.

    6. I can assure this Court, unequivocally, that *I never received* the Summons and Complaint material referenced. While I maintained my office at 40 Elizabeth Street, the simple truth is that unless a suite was identified on mail, that item would not be delivered. Further, at no point did I sign, nor did a member of my office support staff sign, a green mailing

2

"receipt" or certification card acknowledging receipt of the items referenced. On May 31, 2006, I reviewed for the first time copies of certification cards dated September 24, 2001 bearing an unintelligible scrawl in the receipt certification/signature space. I assure this Court – once again, with absolutely certainty – that this is *not my signature* and I do not recognize it to be the signature or customary mark for any employee or person in my employ at that time. Copies of the receipt certification/signature cards are annexed hereto together as Exhibit "E."

7. Additionally, following the attacks on the World Trade Center on September 11, 2001, the 40 Elizabeth Street premises was among those commercial areas located nearby the World Trade Center that were closed and not opened to its tenants following the 9/11 attack. The 40 Elizabeth Street premises and my office were closed for approximately two to three weeks following September 11 due to its proximity to the World Trade Center. Following September 11, I did not return to the 40 Elizabeth Street premises for approximately three weeks. Lastly, upon my return, I did not find among the mail delivered in bulk thereafter any mailing from the Marshal listed in the Summonses; did not find a copy of the Summons and Complaint; and, did not discover any mailing or communication whatsoever relating to this action. I am positive that I did not receive the Summons and Complaint documents referenced by regular mail or by any other method whatsoever. Certainly, had I received the Summons and Complaint I would have vigorously and fully defended myself against the unfounded, specious and insulting allegations made by the Plaintiffs.

8. Following the 2001 "commencement" of this lawsuit, I did not, at any time, receive any communication, correspondence or notice of any sort with respect to this action. None of the parties to this action ever served me with papers with respect to this matter. I did not receive any communication advising me of the commencement of the action or any proceedings with respect to this litigation.

B. **Underlying Allegations and Entry of Default**

9. In reviewing the records retrieved, it would appear that the Bank of East,

3

Asia, Limited, M. Dean Montgomery, Bentley, Mosher, Babson & Lambert, P.C. and TCRM Advisors Inc. reached some sort of agreement and/or understanding with the Plaintiffs. A Stipulation of Dismissal dated January 27, 2005 as to those Defendants is annexed as Exhibit "F."

10. Thereafter, Plaintiffs moved for a Default based upon my "failure to appear," relying upon a Declaration from Old Republic Title Insurance Claims Counsel John P. Carroll. Annexed hereto as Exhibit "G" is Plaintiffs' Motion for a Default and the accompanying Declaration of John P. Carroll. Further, provided for the Court's review is Plaintiffs' Motion for Default Judgment dated June 8, 2005 seeking a Default Judgment. See Exhibit "H." Although service was allegedly made in September of 2001 to commence this action against me, Plaintiffs did not seek a Default Judgment until approximately four years later.

11. Although Exhibits "G" and "H" include myself and Sinowest as parties to be served by mail with papers at 40 Elizabeth Street in New York – again without a suite number, I did not receive these motion papers. I had relocated my office from New York to New Jersey in August of 2002.[1]

12. It must be observed that at no time did I ever avoid service in this matter. I had no knowledge or information whatsoever to lead me to believe that there was a dispute with respect to the matters alleged here, and certainly had no understanding that a lawsuit had been commenced. It is only now, Judgment having entered and collection efforts now having begun, that I have had occasion to understand the allegations made and to be able to address them before this Court and to offer and set forth the "meritorious defense" that I understand is required to vacate a Judgment in circumstances such as these.

13. In reviewing the material retrieved from the Court, I have been able to arrive

---

1/ When I first moved the office, the Post Office forwarded my mail to New Jersey, but this was only for a period of one year. Further, without a suite number, the mail forwarded in 2005 would likely have been returned. In fact, I maintained the New York telephone number of (212) 965-1100 for two and ½ years following my office relocation. No calls were ever received on this matter.

at an initial understanding of the allegations made. It is alleged that I referred a woman named Nancy Chang to TCRM Advisors – a mortgage broker in New York – for the purpose of securing a mortgage on a home in Connecticut. TCRM did so and a mortgage was arranged through Bank of East Asia, Limited. The financing was obtained, and the closing occurred. Ms. Chang did not appear at the closing but acted through her sister – Margaret Lee – who presented an executed Power of Attorney. The loan closed in September of 1998 with Ms. Chang realizing approximately $975,000. Approximately five months later, it was discovered that the Power of Attorney utilized at the time of closing from Ms. Chang to Ms. Lee was fraudulent, and that Ms. Lee defrauded the parties involved. It is my understanding that Ms. Lee is presently incarcerated.

14. The Bank thereafter made a claim against Old Republic as the title company involved in the transaction. Old Republic thereafter, upon information and belief, paid off the loan from the Bank of East Asia and took over whatever claims the Bank was able to assert.

15. From what I can gather, it is alleged in the Complaint that myself and Sinowest helped to arrange for the Power of Attorney and/or were somehow otherwise involved in Ms. Lee's fraudulent activity. *At no time was I ever involved* in an effort to perpetrate a fraud upon any party whatsoever in connection with the subject loan transaction.

C.   **Limited and Legitimate Involvement with Parties in 1998**

16. I first became involved with Ms. Chang and Ms. Lee in 1998 when working as a commercial mortgage broker in New York City. If I recall correctly, Ms. Chang and Ms. Lee had seen an advertisement I had placed in a Chinese newspaper. They contacted me to discuss a mortgage and an appointment was made. I met with them and, based on material and information provided by Ms. Chang, I referred her to TCRM Advisors. I understand that she did not proceed with the loan at that time. After a passage of time she sought the services of another loan broker, Charles Govern. Coincidentally, Mr. Govern referred the loan back to me. I again referred the loan to TCRM. TCRM arranged for the loan and I attended the closing. At

5

the closing, broker fees were paid to TCRM and to World Mortgage Company – each receiving approximately $40,000. I did not receive a fee from either of those brokers. My fee was paid by the borrower.

17. Since that closing transaction and the miscellaneous administrative tasks in the days that followed, I have had no dealings whatsoever with the parties noted in this action. It is only now, having read parts of the District Court's file, that I am now aware of a "Proffer Statement" made by Ms. Lee to the Federal Bureau of Investigation and the U.S. Attorneys office in Maryland. See Exhibit "I." It is important to note that this Proffer Statement is referenced in the Carroll Declaration submitted in support of the default application made against me. This Proffer Statement must be viewed for what it is – an attempt by Ms. Lee to curry favor with the FBI following the discovery of whatever fraudulent scheme she created and executed. At no time did the FBI or any representative of the U.S. Attorney's office contact me or question me about this matter. In reviewing her Proffer Statement, I can only state that the information provided with respect to myself and Sinowest is categorically false. Contrary to Ms. Lee's suggestion that I knew the loan was fraudulent because Ms. Chang was unaware of the loan, I met with *both* Ms. Lee and Ms. Chang in my office and specifically discussed the loan they sought. I recall that Ms. Chang wanted a loan for business purposes, advising me that she had only a small balance on the mortgage on the home. I further recall that she wanted a no income verification mortgage and that she was in the "import business."

18. Further, Ms. Lee indicated in her Proffer Statement that she met with a "Charles Garvin," who was actually Charles Govern from Paradise Mortgage. It is my understanding that he also reviewed loan possibilities with Ms. Lee and it was he who was the party who arranged for the Power of Attorney to be executed. So that this is clear, I had no involvement whatsoever in the preparation or execution of the Power of Attorney, nor was I aware it was being used until around the time of the closing. Ms. Lee's comments or statements that I either prepared the Power of Attorney or arranged for it to be prepared and

executed are absolutely false. It is my understanding that the Power of Attorney was prepared by an attorney named Ronald Reba of South River, New Jersey. It is my understanding that Mr. Reba – now a New Jersey Judge – prepared the Power of Attorney at the request of Mr. Govern. It is my further understanding that Mr. Reba provided an instruction letter to Ms. Chang in Florida concerning the execution of that document. I was not involved in these matters and unaware of them. I was not involved in any way in facilitating or overseeing the execution of the Power of Attorney. I have never met Judge Reba, nor have I ever spoken to him.

19. Lastly, in her Proffer Statement, Ms. Lee insults my family by suggesting that my father is a member of a Chinese criminal gang. My father enjoys a favorable reputation in Chinatown and owns a restaurant in Chinatown. He and I are not involved in any criminal conduct.

20. It is respectfully requested that this Court vacate the Default Judgment entered in July of 2005 and allow me to appear and participate in a determination of the allegations made against me on the merits. I am most anxious to defend myself and Sinowest from these unfounded allegations. The Default Judgment obtained four years after the mailing of a Complaint I never received and premised upon a felon's Proffer Statement is unjust. Further, I request that the Court Stay any further efforts to enforce the Default Judgment until such a time as the Court has had an opportunity to decide this Motion. Lastly, I request that the Court issue an Order specifically staying the Bank Levy and Subpoena issued to Bank of America.

_____
JOHN CHENG

Sworn to before me this 2
__2__ day of June, 2006.

_____
NOTARY PUBLIC

837832v.1

BRENDA MALINOSKY
NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 29, 2007

7