UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY, and OLD
REPUBLIC NATIONAL TITLE
INSURANCE COMPANY as
Subrogee of Eastern Savings Bank                3:01 CV 1772 (SRU)

vs.

BANK OF EAST ASIA LIMITED,
M.DEAN MONTGOMERY, ESQ.,
BENTLEY, MOSHER, BABSON
& LAMBERT, P.C., MARGARET L. LEE,
JOHN CHENG, SINOWEST FINANCIAL
SERVICES and TCRM ADVISORS, INC.         NOVEMBER 22, 2006

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO VACATE

Defendants John Cheng and Sinowest Financial Services ("Sinowest") submit this Supplemental Memorandum in Support of the Cheng and Sinowest Motion to Vacate Default Judgment. This Supplemental Memorandum addresses and highlights discovery conducted to date with respect to the pending Motion to Vacate, and briefly takes note of applicable legal standards in preparation for the hearing to be had with respect to the relief requested. Cheng and Sinowest beg leave to offer to the Court a Memorandum of Law following the hearing on the legal issues presented.

Contrary to the arguments advanced by Old Republic National Title Insurance Company ("Old Republic"), Cheng and Sinowest <u>did not</u> receive notice of this litigation until collection efforts began, and most certainly <u>did not</u> choose to ignore it until that time. Based on the discovery conducted, the Affidavit of Cheng, the Certification of Ronald Reba and excerpts from the deposition of Charles Govern annexed hereto, Old Republic cannot demonstrate that either Cheng or Sinowest received notice of this matter. Further, Cheng and Sinowest have set forth a meritorious defense to the allegations made – to wit: they were uninvolved in Lee's fraud and were as misled and

duped as the remaining parties to the unfortunate October 1998 transaction that lies at the heart of this matter. Old Republic bases its allegations on a proffer statement offered by Margaret Lee ("Lee") in May of 1999 ("the Proffer Statement"). The Proffer Statement is nothing more than a compilation of lies, misstatements and misleading half-truths offered by a felon seeking to negotiate lesser jail time for her fraud.

Old Republic seeks to couch this matter as a combination conspiracy between Lee and Cheng with the willing assistance of Govern and Reba. Rather, as supported by the Reba Certification and the Govern deposition testimony, Cheng was not part of Lee's scheme but was instead similarly caught up in its aftermath. He and his business have been wrongly accused and request from this Court that the default be vacated and that they be permitted the opportunity to defend this matter on the merits.[1]

### A.    Old Republic Cannot Demonstrate Receipt

Old Republic has previously submitted a Declaration by its counsel reciting efforts made to effect service on Cheng and on Sinowest – those efforts being limited to certified mail, return receipt request mailing in September of 2001 to Cheng and Sinowest at 40 Elizabeth Street in New York City. Old Republic also maintains that papers were forwarded in 2005 to the same address.

At no point do Old Republic's submissions to this Court, or the discovery conducted, contravene the assertion by Cheng that he did not – at anytime prior to 2006 – receive notice of this action and he did not have actual notice of these proceedings so as to allow him to retain counsel and defend the allegations made against he and Sinowest. Counsel's recitation as to what mail was forwarded to an incomplete address

---

1/ Old Republic pled the following causes of action against Cheng and Sinowest in its Second Amended Complaint dated November 17, 2003: Unjust Enrichment; Negligent Misrepresentation; Fraudulent Misrepresentation; and Violations of CUTPA. At the heart of each of the claims made – claims that our clients simply wish to defend on the merits – is the premise that Cheng acted in concert with Lee and others to perpetrate a fraud on Chang and the remaining parties herein, utilizing a forged Power of Attorney form to do so. See Second Amended Complaint dated November 17, 2003 on file.

five years ago, combined with the absence of any efforts to locate him personally – either in New York or at his home in New Jersey – is ineffective to rebut Cheng's Affidavit and his statements made in these proceedings to the effect that he did not receive notice of this matter. Old Republic cannot demonstrate that he received actual notice.

### B.  Pre-Hearing Proceedings/Disclosure

Since the Motion to Vacate was made, and since Old Republic filed its opposition followed by Defendants' Reply, the parties have engaged in limited discovery. As part of that process, Cheng and Sinowest produced available documentation with respect to the termination of the Sinowest lease of 40 Elizabeth Street premises. Annexed hereto as Exhibit "A" is an Agreement to Terminate Lease between Sinowest and its landlord – Dadourian Export Corporation. Also provided for the Court's reference are copies of checks tendered by Sinowest covering the timeframe of mid-1999 through July/August of 2002.

This payment history terminates in the summer of 2002 because Sinowest relocated its office from New York to New Jersey. Although postal forwarding arrangements were made for a period of time following the July 31, 2002 termination, there was no postal forwarding heading into 2004 and 2005. Thus, any mail forwarded to Cheng and Sinowest at 40 Elizabeth Street in New York in 2005 – and specifically, Old Republic's Motion for Default and application for Judgment – would not have found its way to Cheng or to Sinowest. See Exhibit "A."

As part of the disclosure herein, Cheng's deposition was also conducted. As part of that examination, he was shown the signature cards on which Old Republic relies. Cheng has stated repeatedly that his signature does not appear on those cards, and that the cards do not reflect a signature he recognizes as that of one of his former

3

employees. See Exhibit "B" for copies of the Certified Mail, Return Receipt signature cards.

Old Republic will, undoubtedly, maintain that in the course of that deposition Cheng testified that mail was left with a security guard or lobby person at the Elizabeth Street premises and that mail would be simply left there for pickup later. This testimony must be considered within its proper context. Annexed hereto as Exhibit "C" is a copy of Cheng's execution of the transcript along with his Errata Sheet and a qualifying statement registering his confusion as to the testimony provided. In that qualifying statement, he states as follows:

> "In responding to questions from Page 16, Line 19 through Page 18, Line 21 about the receipt and distribution of mail at my office at 40 Elizabeth Street, I was mistaken in my answers. Instead of addressing 40 Elizabeth Street and the way mails were delivered at that building, I erroneously gave answers to how mails were delivered at 20 Elizabeth." See Exhibit "C."

This statement must be taken for its face value. Cheng and Sinowest deserve to have this Court hear testimony at a hearing on the issues noted in order to set forth clearly and fully his best recollection as to the process at 40 Elizabeth Street rather than 20 Elizabeth Street - his business' prior location.

The recorded Power of Attorney document utilized by Lee and presented to Connecticut closing counsel to facilitate the refinance transaction at issue was also provided. Annexed hereto as Exhibit "D" is a copy of the Power of Attorney noted as recorded in Book 3159 Page 199 of the Greenwich Land Records

### Testimony of Charles Govern

Most recently, a deposition was taken of Charles J. Govern on November 10, 2006 at the Sheraton Hotel in Eatontown, New Jersey. Annexed hereto as Exhibit "E" are excerpts taken from that testimony. Govern appeared voluntarily and was unable to locate documents with respect to the parties or the underlying refinance efforts

4

Govern is presently employed in the mortgage business, working for America's First Funding Group ("AFFG"). Prior to AFFG, he was employed by Paradise Mortgage See Exhibit "E" at pages 4-7. He stated that he knew Cheng to be a commercial broker and that he maintained a relationship with Ronald Reba. When Govern began his work in the mortgage business, he had approached Reba about serving as counsel in closing loans as they arose. See Exhibit "E" at pages 17-19.

With respect to the loan he worked on with regard to Lee and Nancy Chang ("Chang"), Govern was advised by one of his "hard money investors" that a Power of Attorney was required given the circumstances presented as he understood them - that is, that the owner of the premises was ill in Florida and would not be present at the closing. He coordinated through with Reba and it was Reba who prepared the Power of Attorney document annexed hereto as Exhibit "D" and forwarded it on for execution. See Exhibit at pages 19-26.

Govern never met either Chang or Lee and was unable to get the loan approved or get the transaction closed. See Exhibit "E" at pages 24-26. He learned later that transaction eventually was closed but he did *not* attend the closing and was *not* involved in anyway with the closing. See Exhibit "E" at pages 30-31.

### Proffer Statement Contradicted

In the course of his testimony, Govern was additionally questioned with respect to the Proffer Statement [Annexed hereto as Exhibit "F"] and the Reba Certification [Annexed hereto as Exhibit "G"]. The Proffer Statement contains in it allegations against a gentleman named "Charles Garvin," purportedly a New Jersey mortgage broker involved in the transaction and part of the Power of Attorney procurement process Additionally, the Proffer Statement sets forth specific – yet unsubstantiated – allegations that Garvin/Govern worked in concert with Lee, was aware of the fraudulent nature of

5

the Power of Attorney, that Garvin/Govern went to the loan closing transaction with Cheng and others and, additionally, that Garvin/Govern accompanied Lee to a hotel in Greenwich – which he paid for by credit card - until checks from the refinance were ready. See Proffer Statement annexed hereto as Exhibit "F."

Govern addressed these allegations clearly. At no time was he aware that Lee forged the Power of Attorney [Exhibit "E" at pages 33-34]; as far as he knew the document was executed by Ms. Chang in the normal course [Exhibit "E" at page 34], and, that in October of 1998, he *did not* attend the closing, *did not* work with TCRM Advisors and *did not* check Lee into or pay for a hotel in Greenwich, Connecticut See Exhibit "E" at pages 38-40. In fact, he stated plainly that the allegations against him were false and that he had no role whatsoever in knowingly assisting Lee in completing and processing a fraudulent transaction. See Exhibit "E" at page 45.

Further, Govern was shown the Reba Certification. The Certification recites in pertinent part that Reba was asked by Govern to prepare a Power of Attorney for someone identified to him as Margaret Lee and that Cheng had no involvement whatsoever in the preparation or execution of that instrument. The Certification further notes that Cheng did not participate or function in any way in Reba's dealings with Govern or Lee and that to Reba's knowledge Cheng had no involvement whatsoever with the Power of Attorney. When asked about the Certification, Govern indicated that the information provided in it was correct. See Exhibit "E" at page 54.

Lastly, at the deposition Govern was presented with an Open-End Mortgage deed executed as part of the October 1998 refinance He was directed to the signature page for that document which reflects a purported witness signature by Govern. Having reviewed it, Govern stated without hesitation that the signature contained in that document was not his. See Exhibit "E" at pages 55-56.

6

C. **Reliance on Receipt Cards and Additional Items Misplaced**

Old Republic has previously maintained that the "signed return receipts" offered for the Court's reference demonstrates receipt of the underlying pleadings and notice of this action. However, this fails to recognize in any way that Cheng has sworn that his signature is <u>not</u> on those cards signature, nor is any intelligible mark he recognizes or knows on those cards. Plus, Cheng has stated without equivocation that he did not become aware of this action until this year. Simply maintaining that "Someone signed the return receipt" is not sufficient to establish that Cheng had actual notice of this action.

Old Republic's reliance on the receipt cards provided, as well as any reliance on additional circumstantial evidence, is misplaced and fails to address this core concern – Cheng did not have notice of this action.

In seeking to prove circumstantially that the Court may find that Cheng had notice of this matter in 2001, Old Republic will – we expect – offer to this Court a number of items in the hope of establishing that full access to the Chinatown area following September 11, 2001 was available to Cheng earlier than September 24, 2001, and that the statements he has offered to this Court should therefore be rejected. It is important to note that not a single document was produced, generated or offered throughout the discovery herein that demonstrates that the pleadings were received by Cheng and that he had actual notice of this proceeding.

D. **Enron Standard Met**

Old Republic cites to *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993), maintaining that the Court must look to whether or not the default was willful; whether setting aside the default would prejudice the adversary; and whether a meritorious

7

defense can be presented. *Enron Oil*, at page 96. Cheng and Sinowest have met this standard.

Old Republic alleges that Cheng and Sinowest were instrumental to the fraud orchestrated and engineered by Lee through a forged Power of Attorney. As noted above, Old Republic relies on Lee's Proffer Statement to establish this unsubstantiated chain of events. This flawed foundation is further weakened by the Certification from the Hon. Ronald Reba, along with the unequivocal testimony of Govern – where he states clearly that he was unable to close the loan, did not attend the eventual closing and had no role whatsoever in the October 1998 closing transaction in Greenwich. As per both Judge Reba and Govern, Cheng had no connection whatsoever with the Power of Attorney, was not involved in its preparation, did not request its preparation and had no role in the efforts undertaken with the context of Lee's fraud on the parties and entities involves, *including* Mr. Cheng and Sinowest.

Any failure to participate in this litigation was <u>not</u> intentional. Additionally, no prejudice can be shown by Old Republic. Should the Court grant the Motion to Vacate, Old Republic will merely need to re-gather its facts and seek to prove the allegations it has made – the same burden it would have had if Cheng and Sinowest had pled in 2001. Our clients most certainly should be given the opportunity to defend this action and to defend the allegations made. Old Republic, it cannot be reasonably denied, possesses the ability and resources to seek out Lee and to prove its claims in the normal course. Any claim of prejudice does <u>not</u> outweigh or overcome the equitable considerations set forth in favor of allowing Mr. Cheng and Sinowest to defend themselves.

Cheng and Sinowest meet the standards set forth in *Enron Oil* and should be permitted the setting aside of the Judgemnt in place and be allowed to defend themselves like any litigant would be able to do in the normal course.

8

**CONCLUSION**

Based on the proceedings heretofore had herein, it is requested that the foregoing be taken into account as the Court conducts a hearing with respect to the pending Motion to Vacate Default.

Dated: November 22, 2006

JOHN CHENG AND
SINOWEST FINANCIAL SERVICES,

By: *[signature]*
Michael K Stanton, Jr. (ct08916)
HALLORAN & SAGE LLP
315 Post Road West
Westport, CT 06880
Tel: 203-227-2855
Fax: 203-227-6992

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the counsel listed below on November 22, 2006:

Madeleine F. Grossman, Esq.
Frank Silvestri, Jr., Esq.
Levett Rockwood P.C.
33 Riverside Avenue
Westport, CT 06881
fsilvestri@levettrockwood.com
Tel. No.: (203) 222-0885
Fax No.: (203) 226-8025

Kenneth Sussmane, Esq.
McCue, Sussmane & Zapfel
521 Fifth Avenue - 28th Floor
New York, NY 10175
ksussmane@mszpc.com
Tel. No.: (212) 931-5500
Fax No.: (212) 931-5508

Scott S. McKessy, Esq.
Reed Smith LLP
599 Lexington Avenue – 29th Floor
New York, NY 10022
smckessy@reedsmith.com
Tel. No.: (212) 521-5421
Fax No.: (212) 521-5450

Christopher L. Brigham, Esq.
Updike, Kelly & Spellacy
265 Church Street
New Haven, CT 06510
cbrigham@uks.com
Tel. No.: (203) 786-8310
Fax No.: (203) 772-2037

William H. Champlin, III, Esq.
Tyler, Cooper & Alcorn
185 Asylum Street
Hartford, CT 06103
champlin@tylercooper.com
Tel. No.: (860) 725-6206
Fax No.: (860) 278-3802

Frank G. Usseglio, Esq.
Kenny, O'Keefe & Usseglio, PC
21 Oak Street – Suite 208
Hartford, CT 06106
fusseglio@kou-law.com
Tel. No.: (860) 246-2700
Fax No.: (860) 246-6480

Francis Donnarumma
100 Grand Street – Suite 2F
Waterbury, CT 06702
fdonnarumma@snet.net
Tel. No.: (203) 759-1002
Fax No.: (203) 759-1607

_____
Michael K. Stanton, Jr.

853290v 1